BREWER v. McCAIN.

1. PRACTICE—MOTION.

The objection that several causes of action are improperly joined in one count of the complaint must be taken by motion; otherwise it is waived.

2. PRACTICE.

Everything relating to and arising out of a partnership agreement may be determined in one suit and as one cause of action.

3. EVIDENCE—WRITTEN AND PAROL.

When a writing signed by the parties does not purport to embrace their entire agreement, parol evidence may be admitted.

4. IMMATERIAL ERROR.

Unprejudicial error does not warrant a reversal.

*Appeal from the District Court of Arapahoe County.*

THE original complaint alleged the formation of a partnership by the plaintiff McCain and the defendant Brewer on the first day of January, 1887, the purpose of which was the manufacture and sale of brick in the city of Denver, and that such firm, as Brewer & McCain, carried on said business for about two years. It was alleged that just prior to and contemporaneous with the execution of the written agreement of partnership, the defendant agreed to deed to the plaintiff an undivided half interest in certain lands, and this agreement to convey was one of the inducements which led the plaintiff to form the partnership.

In pursuance of this agreement touching the sale of real estate, Brewer executed his deeds for the interest to which plaintiff was entitled, for which the plaintiff in turn executed his promissory notes for the price agreed upon, and the deeds and the notes were placed in escrow in the German National Bank of Denver, the deeds to be delivered when the notes were paid ; and as, by their arrangement, Brewer had charge of the books and the management of the business of the firm, an accounting was to be made in December of each year, and

McCain's share of the profits was to be applied by Brewer on the payment of the notes.

There are other allegations of the complaint not necessary to mention, but it is sufficient to say that the complaint charged a violation by the defendant of the terms of the partnership, and prayed for a dissolution and distribution of the assets in accordance with the rights of the parties.

Issues were finally joined and trial begun, and after proceeding for some time,—either induced thereto by a ruling of the court that certain testimony offered by the plaintiff was inadmissible as the complaint then was, or from information developed on the trial, or possibly for both reasons,—the plaintiff asked, and, against the defendant's objection, was granted, leave to file an amended complaint to correspond to the facts.

This amended complaint, and a subsequent amendment thereto, alleged that negotiations looking to the partnership were begun by these parties prior to September, 1886, and that, as the result of repeated conferences, the partnership agreement was consummated some time during the latter part of that year. The partners selected as a site for their brick yard a tract of land known as the "Kate Clark tract," but after its purchase the partners concluded to change the site. They accordingly sold this tract and purchased from The Hallack Lumber Company two other certain tracts of land, aggregating about twenty acres, together with certain chattels and appurtenances to the yard for the manufacture of brick, the titles to which were taken in the name of Brewer, as the plaintiff alleges, for the joint benefit of himself and the plaintiff. In pursuance thereof and as further evidence of the same, Brewer executed his deed for the undivided half of the Hallack lands to McCain as grantee, and McCain gave his notes therefor, as averred in the original complaint.

The amended complaint then proceeds by alleging that contemporaneous with, and just after, the making of these deeds and notes, what are called "Articles of Special Partner-

ship," in writing (which were the same as those set up in the original complaint), were signed by the partners, relating particularly to the future conduct of the business, by the terms of which Brewer was constituted the manager of the financial affairs of the partnership, with power to receive and take charge of all its moneys and assets, while McCain's duties consisted in the superintendence of the manufacture of brick, and the delivery of the same as ordered. In addition thereto is a provision relating to these deeds and notes in escrow, which is as follows:

" It is further agreed that, on the first Monday in December of each and every year, there shall be made and had a settlement and accounting of all the said partnership business; and after deducting all the actual expenses of said partnership, the net profits thereof shall be divided between the said parties, the profits or share of said John McCain to be retained by said Benn Brewer to pay the notes of said John McCain now in escrow, with deeds, in German National Bank of Denver. And after said notes and interest are fully paid, the profits thereafter to be equally divided."

A breach of this agreement by defendant was charged;— the failure of Brewer to give McCain all his share of the profits realized from the sale of the Kate Clark tract, the refusal of Brewer to apply McCain's profits to the payment of the escrow notes, and his failure to deliver the escrow deeds. A prayer for dissolution of the partnership follows, and for equitable relief, etc.

To this amended complaint a demurrer was filed by the defendant upon the ground, among others, that several distinct causes of action were improperly united in one count of the complaint. It was overruled by the court, whereupon the defendant filed his answer, denying the material allegations of the amended complaint. Thereafter other slight amendments were made to the amended complaint and to the answer, and a replication was filed.

After the suit was begun, by agreement of parties, all personal property of the firm was converted into money, and

the same held subject to the decree to be rendered.   Upon
a trial to the court without a jury, findings of fact were
made and the equities declared to be with the plaintiff.   An
accounting was taken, upon which the court determined that
the plaintiff's share in the profits of the copartnership at
the time of the trial amounted to the sum of $6,133.47, and
that the plaintiff was entitled to a deed of conveyance for
an undivided .one half interest in the two Hallack tracts of
land described in the escrow deeds, upon the payment by
the plaintiff to the defendant of the residue of the notes,
after deducting therefrom plaintiff's said profits.

A finding was made to the effect that while the Kate Clark
tract of land was intended by the parties to be a part of the
partnership property, the defendant, when he sold the same,
had accounted to the plaintiff for the latter's share of the
profits realized from the sale.   Upon this appeal, therefore,
this branch of the case is entirely eliminated.   From this
judgment and decree the defendant appeals, and assigns
seventy-one grounds of error.

Mr. C. J. Hughes, Jr., for appellant.

Messrs. Benedict & Phelps, for appellee.

Mr. Justice Campbell delivered the opinion of the court.

In view of our conclusion, it would be unprofitable, and,
within the limits of an opinion, practically impossible, to no-
tice in detail these various assignments, but they may be
grouped for discussion, as they have been by counsel in their
argument, under several different heads.

I. The first objection urged is to the ruling of the court
permitting the plaintiff to file the amended complaint.   The
granting of this permission was justifiable as the exercise of
a reasonable discretion by the court, unless the cause of ac-
tion in the amended complaint was a departure from that in
the original.   The objection taken, first by .demurrer, after·

wards by answer, that three separate and distinct causes of action are improperly joined in one count of the complaint, might be summarily disposed of by saying that this objection should be taken by motion; otherwise it is waived. Bliss on Code Pleading (3d ed.), sec. 423.

But upon more substantial grounds, neither of these objections is tenable. There was no change of the cause of action. It is said that the first of the three causes of action blended in one statement is based upon the breach of a written agreement of partnership; the second is for profits arising from the sale of the Kate Clark tract of land; and the third for the specific performance of an agreement by Brewer to sell and convey to the plaintiff an undivided half interest in the Hallack tracts of land.

The objection, it will be observed, is not that several causes of action have been improperly united in the same complaint, but that there is not a separate statement in the complaint of the three causes of action which are tacitly recognized as proper to be joined in one suit, but in separate statements of the complaint. The argument of the defendant proceeds upon a misconception or misstatement of the real nature of plaintiff's cause of action. The action is based upon an agreement of partnership formed by the parties to this suit, and the cause of action is the breach of the terms of that agreement by the defendant.

In the original complaint the time of the formation of this partnership is designated as January 1, 1887, and the evidence of the agreement is alleged to be in writing. In the amended complaints the time, though not definitely fixed, is placed at some time in the year 1886, and the general agreement therefor rested in parol and as the result of repeated negotiations between the parties. But after its formation, and shortly after the first of January, 1887, a portion, or the concluding part of said agreement, was reduced to writing and signed by the parties, which written agreement was that set up in the original complaint. This writing relates chiefly, if not wholly, to the manner of conducting the partnership

affairs from that time forward,—the previous portions of the partnership agreement resting in parol having been substantially executed,—and it contains the additional reference to the payment of the escrow notes and the delivery of the escrow deeds.

It is clear that the divisions of the complaint thus sought to be made by the defendant are not separate and distinct matters, each of which necessarily constitutes a separate and distinct cause of action, but they are parts and parcels only of one general transaction arising out of one general and complete agreement of partnership. Merely because this agreement relates to a number of different items is no reason for holding that for a breach of each the injured party must bring a separate suit; but however numerous are the different matters which pertain to the partnership and grow out of this agreement, everything relating thereto and arising out of the one general agreement may be properly litigated and determined in one suit and as one cause of action.

It would be impossible properly to adjust the partnership affairs and make division of the assets between the partners without determining all of the matters set up in this complaint, and there can be no valid reason for requiring the plaintiff to proceed by separate suits upon each one of these alleged causes of action.

II. Many of the assignments of error relate to the admission of improper evidence offered by the plaintiff. The questions of law, as is so often the case, are not so seriously controverted as is the application of the law to the facts of the case. The defendant contends that the court violated an elementary rule of law by admitting oral evidence of a partnership agreement in violation of the express terms of the written agreement of partnership. Upon the face of this writing, however, it is apparent that it was not intended to constitute the entire agreement. It assumed the existence of a partnership theretofore created. It contains no provision for the capital of the firm, nor is there any clause specifying what either partner has contributed as capital, or

shall contribute thereto. It purports to provide chiefly, if not wholly, for the future conduct of the business, and besides this contains a clause relating to the deeds to the Hallack tracts of land.

The use of the appellation "Articles of Special Partnership," certainly, in connection with the other evidence, is significant. It implies, we think, the existence of a general partnership, while the writing itself related only to a special part or a particular feature of the general agreement. Upon the evidence the court found that the partnership had been entered into in September, 1886, for the manufacture and sale of brick, and therein the finding is abundantly supported. The rule, which undoubtedly exists, was not violated by the admission of this class of evidence, because, among other satisfactory reasons, this writing clearly did not purport to embrace the entire agreement of the parties, and did not sufficiently manifest their intention. There is, moreover, no difficulty from the evidence in reconciling this writing with the previous oral agreement of the parties, and considering it, as we think it was, as the closing portion or last clause of the one general agreement.

III. Another objection is that parol evidence was introduced to establish a partnership in real estate, and that in this the statute of frauds was violated. This class of evidence related chiefly to the Kate Clark tract of land, which feature of the case, as we have said, is not now properly before us, and most of the objections to the evidence fall with it; so that it is unnecessary to determine whether the agreement of the parties constituted a partnership in real estate, and equally useless to determine the law applicable to the facts of this branch of the case. What we might say thereupon would be *obiter*, and the defendant, having received the benefit of a finding that he had already paid to the plaintiff his share of the profits arising from the sale of this Kate Clark tract, is not in a position to ask for our decision upon such ruling of the court.

IV. One special objection, however, was made to the rul

ing of the court in refusing to permit the defendant to interrogate the witness Hammond as to a conversation between himself and the plaintiff. This conversation was objected to by the counsel for the plaintiff upon the ground that its effect tended to impeach the credibility of the plaintiff, and was inadmissible without first having laid a foundation therefor, and that the evidence was wholly immaterial to any issue in the case.

The abstract of the testimony does not sufficiently disclose the real point at issue, but the bill of exceptions clearly shows that the ruling of the court was proper. The issue to which it was claimed this evidence was material was as to the manner of payment of the escrow notes. By Hammond it was attempted to show that in a conversation with McCain the latter had said that he wished to sell certain property in order to get the money with which to pay these notes. The court ruled that the witness McCain, being a party to the suit, might be impeached without having first laid the foundation therefor, but that alleged inconsistent statements of his could not be admitted in any event, unless they related to some material issue in the case, and that the mere statement by the plaintiff that he was endeavoring to get money with which to pay these notes was not material for the purpose of negativing his claim that the notes were to be paid, as the articles of special partnership provided, from his share of the profits of the business.

But, even if this ruling of the court was wrong, the witness Hammond was subsequently allowed to testify, without any objection by the plaintiff, that in another conversation with the plaintiff the latter had made a statement to the effect that he was trying to borrow money for the purpose of paying these notes, so that we fail to see wherein the defendant was prejudiced by the ruling of the court.

V. Another objection urged is that by the escrow agreement time was made the essence of the contract, and the plaintiff not having paid the notes at their maturity, all his rights to the conveyance terminated. When these escrow deeds were

drawn and the notes executed, Brewer and McCain took them to the German National Bank, and left them with the cashier, Cooper, and from information which he swears was given to him either by McCain or by Brewer, and possibly by both,—but as to this Mr. Cooper is not certain,—he indorsed upon the envelope inclosing these papers the following:

" The enclosed deeds from Benn Brewer & John A. Witter are left in escrow with the German National Bank, to be delivered to John McCain only on payment in full of enclosed notes, if not promptly paid at maturity said deeds to be returned to Benn Brewer.

" January 4, 1887.
" Benn Brewer & John A. Witter,
        " to John McCain."

This was not signed by either party. Brewer claims that it correctly expressed their agreement. On the contrary, McCain (who was very deaf) says that it does not, and that time was not made the essence of the contract, but that Brewer told him that the documents were left at the bank for safe-keeping. Upon the conflicting testimony the court apparently believed McCain.

Unquestionably, time may be made the essence of a contract, but even if the agreement was as written by Cooper, still we think time was not intended to be made the essence of this contract; for, by the so-called special articles of partnership signed by the parties to this suit, the notes were to be paid from McCain's share of the profits of the business. The partnership was to continue until dissolved by mutual consent. When the notes matured there might not be profits sufficient to pay them, and this recognition of such a contingency is inconsistent with the position that if the notes were not paid when due the contract was at an end, and plaintiff's rights became forfeited.

But if the writing indorsed by Cooper correctly evidenced the agreement of the parties, and if thereby time was made the essence of the contract, the defendant is not

in a position to assert this claim. By the terms of special partnership, which must be taken in connection with this indorsement, the defendant became the financial manager of the firm, kept or superintended its books, and should have ascertained the profits, if any, in December of each year. This he did not do. When the first note became due the defendant neither asked the plaintiff for its payment, nor claimed that the failure to pay was a violation of the contract. Neither did he make any such claim when the other notes matured. It was not until after differences arose between the parties that any such contention was made. Then it was that the defendant withdrew from the bank these papers, and retained the deeds, while at the same time he had under his control all the assets of the firm, and refused to make an accounting to determine what amount the plaintiff should pay. He therefore has waived the claim that time was the essence of the contract, and that plaintiff's failure strictly to comply therewith forfeits his rights to this conveyance.

VI. Another contention is that the court erred in admitting oral testimony to prove an agreement for the sale and conveyance of the Hallack lands, and that such evidence, if admissible, is insufficient to support the findings and the decree of the court that the plaintiff was entitled to any interest in such property.

We are at a loss to conceive how the defendant was prejudiced by the admission of any oral testimony admitted in this case to establish any such agreement, even if such evidence was offered, because the execution of the deeds by the grantor, the making of the notes evidencing the purchase price to be paid by the grantee, and the delivery of these papers in escrow, together with the reference to this transaction found in the articles of special partnership, are writings sufficient to establish this agreement without reliance upon any oral testimony.

The court found that the plaintiff's profits from the business should be applied to the payment of the escrow notes.

It also found that the defendant was entitled to a deed of conveyance for an undivided one half interest in these two Hallack tracts when the escrow notes were paid. There is no specific reason given for these findings. Whether it was because of the proof of the written agreement for the conveyance, entirely disconnected and irrespective of the question as to whether or not such agreement was a part of the general agreement for the partnership, or whether this finding was because the plaintiff was entitled to the property as a portion of his assets of the partnership, is immaterial. A fair deduction from all the evidence is that this finding can be sustained upon either or both of these hypotheses, and we think the finding and decree of the court in respect thereto were right.

We are aware that the foregoing discussion does not in detail dispose of every assignment of error, but we think it covers the substantial grounds of the controverted questions in the case. It would be quite remarkable if some slight errors were not found in a record so voluminous as this in a case so ably and strenuously contested from the inception to the close. We have read with great care the entire record,— not only the abstract and the supplemental abstract, but the original record, including the bill of exceptions,—in every case where additional light could be thrown upon the disputed propositions. Possibly some rulings by the court, when subjected to close analysis, are questionable, but our examination satisfies us that the rulings upon the questions of pleading are right, and that abundant evidence, competent and admissible under sound rules of evidence, was produced to support the findings and decree, and what is of greater importance, that justice was done as between the parties to the action, and that the decree of the court was right. The judgment should, therefore, be affirmed.

*Affirmed.*